UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AVON PRODUCTS, INC.,
                Plaintiff,

   -against-

MOROCCANOIL, INC.,
                Defendant.
------------------------------------X



MEMORANDUM
DECISION AND ORDER
12 Civ. 4507 (GBD)

GEORGE B. DANIELS, District Judge:

Plaintiff Avon Products, Inc. brings this action, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, against Defendant Moroccanoil, Inc., seeking a declaratory judgment that (1) "Avon's use of the term 'Moroccan Argan Oil' to indicate that its products ... contain argan oil originating from Morocco constitutes a fair use within the meaning of Section 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4)," and "does not constitute infringement, dilution or unfair competition with respect to any rights claimed by [Defendant] under the Lanham Act, 15 U.S.C. §§ 1501 *et seq.*; and (2) "Avon's use of 'Moroccan Argan Oil' to indicate that its products contain argan oil from Morocco does not violate the common law of the State of New York relating to trademark infringement, unfair competition, and trademark dilution with respect to any common law rights claimed by [Defendant]." Compl. at 9. Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(1), or alternatively asks this Court to exercise its discretion to decline jurisdiction over this matter pursuant to the Declaratory Judgment Act.

## BACKGROUND

Plaintiff, a New York corporation, is an international manufacturer and distributer of beauty, household and personal care products. Compl. ¶ 1, 6. Defendant, a California

corporation, is a manufacturer and distributor of haircare and skincare products to retailers and salons located throughout the United States. Id. ¶ 2.

On or around November 18, 2011, Plaintiff filed a Canadian trademark application (the "646 Application"), for the word mark ADVANCE TECHNIQUES 360 NOURISH MOROCCAN ARGAN OIL for hair care products. Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. ("Def. Mem.") at 1. Subsequently, California counsel for Moroccanoil, Inc. sent a "To Whom It May Concern" letter dated April 5, 2012 to Plaintiff's counsel in Ontario, with a copy to Plaintiff's New York headquarters. Compl., Ex. C. The letter informed Plaintiff of Defendant's Canadian Trademark Registration No. TMA734460 for MOROCCANOIL, and Canadian Application Nos. 1504613, 1504815, 1504614, 1505587, and 1505386, each for use with hair care products. Id. The letter explained that Defendant had become aware of the '646 Application, and believed that the applied for mark "is confusingly similar to the Morrocanoil Trademarks." Id.

> The letter further stated that:
>
> The term MOROCCAN ARGAN OIL within the mark applied for is nothing more than a rearrangement of the MOROCCANOIL mark with the term "argan" inserted in the middle. Moreover, the '646 Application states that the mark will be used the marks on "hair care preparations" which are the same goods sold by Moroccanoil. As a result, use of the mark applied for in the '646 Application has a strong likelihood of causing customer confusion as to the source or affiliation of the products and will dilute the distinctiveness of the Moroccanoil Trademarks.

Id. The letter then requested that Plaintiff abandon the '646 Application and cease use of the applied for marks in commerce. Id. The letter advised that Defendant was prepared to file a Notice of Opposition to the '646 Application in the Canadian Intellectual Property Office ("CIPO") if Plaintiff did not abandon the Canadian application. Id.

2

The letter also stated that Moroccanoil "desire[d] to avoid legal action" and requested that Defendant "contact the undersigned within five (5) days ... to confirm that [it has] ceased and will permanently cease any further use of the ADVANCE TECHNIQUES 360 NOURISH MOROCCAN ARGAN OIL mark and that [it] intend[s] to expressly abandon the '646 Application." Id. The letter did not mention any U.S. infringement or any other activity by Plaintiff outside of Canada, except to state in an introductory paragraph that "[t]he Morrocanoil Trademarks symbolize substantial goodwill and consumer recognition, which have been developed by Morrocanoil through extensive advertising, promotion, educational endeavors and distribution efforts in Canada and worldwide". Id.

On May 22, 2012, Pascal Lauzon, an attorney in Montreal, Canada who had represented Moroccanoil Israel and Moroccanoil Canada in various matters in Canada, called Anastasios Kouros, an Avon in-house attorney with whom he went to law school in Canada, at Avon's global headquarters in New York. Kouros Decl. ¶ 3. Plaintiff claims that during that call, Mr. Lauzon said that "his client objected to Avon's use of the term 'Moroccan Argan Oil' and to resolve the matter to the satisfaction of his client, Avon would have to refrain from using that term." Id. ¶ 6. Mr. Kouros replied that he did not handle trademark matters for Avon and was therefore not very familiar with the issue, but would inform Avon's corporate trademark counsel. Lauzon Decl. ¶ 9. Defendant claims that the phone conversation only addressed the Canadian Trademark Application, and neither party mentioned infringement, threatened court action, nor mentioned activity or issues outside of Canada. Id. ¶ 10.

On June 6, 2012, Plaintiff filed the Complaint in this matter. The Complaint alleges that Avon "is set to launch the advertising and sale in the United States of its ... haircare products displaying the term 'Moroccan Argan Oil'" and has a "reasonable apprehension that once it

3

begins selling the products ... [Defendant] will file suit against Avon." Compl. ¶¶ 28, 24. On June 28, 2012, Moroccanoil Israel and Moroccanoil Canada filed a Statement of Opposition with the CIPO in Canada against the Plaintiff's Canadian Trademark Application.

## **LEGAL STANDARD**

### **Subject Matter Jurisdiction Standard**

A case may be properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional authority to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction or failure to state a cause of action, a court must accept as true all material factual allegations in the complaint. But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F. 3d 129, 131 (2d Cir. 1998) (internal citation omitted). In determining subject matter jurisdiction, a court "may refer to evidence outside the pleadings." Makarova, 201 F.3d at 113. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id.

### **The Declaratory Judgment Act**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction. . . any court of the United States. . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc v.

Genentech, Inc., 549 U.S. 118, 127 (2007) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)). As a result of this constitutional limit on judicial power, a federal court lacks subject matter jurisdiction over an action unless it presents an actual case or controversy. S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exchange, Inc., 24 F.3d 427, 431 (2d Cir. 1994) (citations omitted).

A declaratory judgment action satisfies Article III's case or controversy requirement when it involves a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests," which calls for "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, Inc., 549 U.S. at 126 (internal citations omitted). To demonstrate that there is a case or controversy, a plaintiff has the burden of establishing that the totality of the circumstances demonstrates a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" to warrant the issuance of a declaratory judgment. Id. at 127. While a plaintiff need not demonstrate that defendant's conduct creates a real and reasonable apprehension of liability, "the threat of litigation remains relevant in determining whether an actual controversy exists." Nike, Inc. v. Already, LLC, 663 F.3d 89, 96 (2d Cir. 2011) (citing MedImmune, 549 U.S. at 128.).

## II. There is No Case or Controversy Sufficient to Warrant Issuance of a Declaratory Judgment

Plaintiff argues that the "totality of the circumstances" demonstrates a controversy over whether "Avon's use of the descriptor 'Moroccan Argan Oil' in the United States ... infringe[s on] MI's purported trademark rights and/or [whether] Morrocanoil's mark is invalid." Pl.'s Memo of Law in Opp. To Def.'s Mot. to Dismiss ("Pl.'s Memo") at 12. Plaintiff contends that (1) Defendant's letter, (2) the phone conversation between counsel for Plaintiff and Defendant

5

regarding that letter; and (3) a number of suits filed by Plaintiff against other parties for infringement of Moroccanoil's United States trademarks, demonstrate that this substantial controversy exists. None of these circumstances demonstrate that Defendant has accused Plaintiff of infringing on Defendant's U.S. trademarks, nor that Defendant intends to take action to enforce its U.S. trademarks against Plaintiff. Thus, there is no substantial controversy sufficient to warrant the issuance of a declaratory judgment.

Plaintiff bases its argument that there is a controversy regarding Defendant's U.S. trademarks primarily on the fact that Defendant's letter regarding the '646 Application was sent from "a California company and a California law firm, and it talks about worldwide rights." Oral Arg. Tr. at 19:18-19, Sept. 12, 2012. Plaintiff thus argues that the "letter was intended to and in fact, was interpreted ... as a demand that extended beyond Canada to the United States." Id. at 19:22-23. Plaintiff argues that the letter and follow-up conversation between counsel demonstrate that there is a dispute over Plaintiff's potential infringement of Defendant's U.S. trademarks, and that the "separate dispute confined to the registration and validity of Canadian trademarks is irrelevant to this motion." Pl.'s Memo at 10.

Plaintiff's interpretation of Defendant's letter and counsel's subsequent telephone conversation is not supported in fact. Defendant's letter specifically and directly addresses a single Canadian trademark application, and requests that Plaintiff cease use of the Canadian trademarks denoted in the letter. No U.S. trademarks were mentioned in the letter or during the follow-up call. None of the circumstances that Plaintiff highlights including the fact that (1) the letter was sent from a law firm within the United States; (2) a copy of the letter was sent to Avon's New York headquarters; and (3) Avon's counsel who discussed the letter with his Canadian law school classmate, was in the United States, demonstrate that Defendant considered

6

Plaintiff to be potentially infringing on its U.S. trademarks or that Defendant was objecting to any activity by Plaintiff in the United States.

Even if the letter and subsequent conversation between counsel could be construed as signaling Defendant's potential objection to Plaintiff's future actions within the United States, Plaintiff has not alleged that Defendant actually claimed that Plaintiff was violating its U.S. trademarks. Plaintiff has presented no legal authority to support its position that a controversy could exist prior to a specific claim by a U.S. trademark holder that Plaintiff has either violated, or by some potential impending action stands to violate, Defendant's U.S. trademark rights. In each case Plaintiff cites, the defendant made an outright claim that Plaintiff was either infringing, or with pending action would infringe, on the U.S. trademark at issue.[1] The present dispute over Canadian trademark rights is to be decided by the Canadian Courts.

Absent such a claim of U.S. infringement, there is no "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" so as to warrant the issuance of a declaratory judgment. MedImmune, Inc., 549 U.S at 127; See Prasco v. Medicis Pharmaceutical Corp., 537 F.3d 1329, 1340 (Fed. Cir. 2008) (dismissing declaratory judgment action where defendants had not accused plaintiff of infringement, asserted any rights to the patent at issue, nor taken any actions implying such claims).

---

[1] See , e.g., EnviroGLAS Products, Inc. v. EnviroGLAS Products, LLC., 705 F. Supp. 2d 560 (N.D. Tex. 2010) (case and controversy existed where defendant sent letters demanding that plaintiff cease and desist further infringement of defendant's U.S. trademark and patents); Blue Athletic, Inc. v. Nordstrom, Inc., No. 2010 DNH 116, 2010 WL 2836303 (D.N.H. July 19, 2010) (case and controversy existed where defendant sent plaintiff two cease and desist letters which set out a prima facie case of infringement of defendant's U.S. trademark and defendant filed formal opposition against plaintiff's application for trademark registration with the U.S. Patent and Trademark Office on the grounds that plaintiff's mark would infringe on its own mark); HIS IP, Inc. v. Champion Window Mfg. & Suppl Co., 510 F. Supp. 2d 948 (M.D. Fla. 2007) (case and controversy existed where defendant filed a cancellation petition in the federal U.S. Trademark Trial and Appeal Board for cancellation of plaintiff's U.S. trademarks, filed an opposition to plaintiff's pending U.S. trademark application, and sent correspondence to plaintiff suggesting it would sue if its concerns could not be settled on an amicable basis).

7

Plaintiff's argument that Defendant's prosecution of infringement actions in the United States against other parties demonstrates a current U.S. trademark infringement dispute between Plaintiff and Defendant also fails. Prior actions against other infringers do not give rise to an actual controversy with a non-party. <u>Indigodental GMBH & Co. JG v. Ivoclar Vivadent, Inc.</u>, No. 08 Civ. 7657, 2008 WL 5262694 at *3 (S.D.N.Y. 2008) (holding that defendant's enforcement of a patent against other parties did not create an actual controversy between plaintiff and defendant absent any threat to enforce the patent against plaintiff). There is presently no case or controversy over which this Court has subject matter jurisdiction.

## CONCLUSION

Defendant's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction (Doc. Entry No. 9) is GRANTED. The Clerk of the Court is directed to close this case.

Dated: March 4, 2013
      New York, New York

SO ORDERED:

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge

8